In the Matter of the Transfer Tax upon the Estate of GEORGE WILLIAM OTIS, Deceased.

W. FRANK NEWELL, as Executor, etc., Respondent; EUGENE M. TRAVIS, Comptroller of the State of New York, Appellant.

First Department, February 6, 1920.

Tax — additional transfer tax upon securities — exemption from taxation — payment of stamp tax to Comptroller or payment of local personal property tax — statute construed — purchase of securities and death of owner between period when personal property tax is levied.

By the enactment of section 221-b of the Tax Law the Legislature intended to enable an owner of securities to exempt the same from the additional transfer tax in either of two ways, *first*, by the payment to the State Comptroller of a stamp tax under section 331 of the Tax Law, or *second*, by the payment of a personal property tax thereon. Either method of exemption is open to the owner of such securities.

But the additional tax imposed by section 221-b of the Tax Law for a failure of the owner of securities to obtain the exemption aforesaid should not be imposed where it appears that, although he did not pay the stamp tax to the Comptroller, he bought the securities after the local assessment upon personal property was levied and died prior to the date when they might have been taxed in the next assessment roll, so that in fact he never had an opportunity to avail himself of that means of exemption.

PAGE, J., dissents.

APPEAL by Eugene M. Travis, as Comptroller, from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 18th day of June, 1918, modifying a prior order assessing a transfer tax.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason,* attorney], for the State Comptroller, appellant.

*Julius H. Beckwith,* for the respondent.

MERRELL, J.:

This appeal is by the State Comptroller from an order of the surrogate of New York county modifying a previous order of the surrogate assessing a transfer tax upon the estate of George William Otis, deceased. The order of assessment imposed a tax of five per cent upon the sum of $27,805.68 of investment securities held by the decedent at the time of his death. The transfer tax upon this sum in the original order of assessment amounted to $1,390.28. Appeal was taken to the surrogate from the order of assessment, and the surrogate upon said appeal modified the order by striking therefrom that part thereof which imposed a tax of five per cent upon said investment securities. (103 Misc. Rep. 655.) The tax was originally assessed pursuant to the provisions of section 221-b of the Tax Law (as added by Laws of 1917, chap. 700). That section went into effect July 1, 1917, and is as follows:

" § 221-b. Additional tax on investments in certain cases. Upon every transfer of an investment, as defined in article fifteen of this chapter, taxable under this article, a tax is hereby imposed, in addition to the tax imposed by section two hundred and twenty-one-a, of five per centum of the appraised inventory value of such investment, unless the tax on such investment as prescribed by article fifteen of this chapter or the tax on a secured debt as defined by former article fifteen of this chapter shall have been paid on such investment or secured debt and stamps affixed for a period including the date of the death of the decedent or unless the personal representatives of decedent are able to prove that a personal property tax was assessed and paid on such investment or secured debt during the period it was held by decedent; or unless the decedent was

actually engaged in the *bona fide* purchase and sale of investments as a business, and at the time of his death had maintained an office or place of business in this State for the carrying on of the actual *bona fide* business of purchasing and selling investments, as distinguished from the purchase thereof for investment purposes, and had owned and held such investment for sale for the purpose of his business and not as investment for a period of not more than eight months prior to his death."

From such order of modification the Comptroller has appealed to this court.

In reversing his former action the surrogate held that under the peculiar circumstances of this case, section 221-b did not apply, and there was no authority for imposing a tax upon said investment securities held by the decedent at the time of his death and which passed under his will. The decedent died September 28, 1917, a resident of the State of New York. The securities consisted of the bonds of certain railroads not organized under the laws of the State of New York. Concededly the decedent had not paid a personal tax upon said securities, and no tax had been paid thereon or stamps affixed thereto pursuant to the provisions of section 331 of the Tax Law (added by Laws of 1916, chap. 261, as amd. by Laws of 1917, chaps. 39, 700). The latter section provides as follows:

" § 331. Payment of tax on investments. After this article takes effect, any person may take or send to the office of the Comptroller of this State any investment, and may pay to the State a tax at the rate of twenty cents per year on each one hundred dollars or fraction thereof of the face value of such investment for one or more years not exceeding five, under such regulations as the Comptroller may prescribe, and the Comptroller shall thereupon affix stamps hereinafter provided for, to such investment, which stamps shall be duly signed by the Comptroller or his duly authorized representative and dated as of the date of the payment of such tax. The Comptroller shall keep a record of such investment together with the name and address of the person presenting the same and the date of payment of the tax.

"All such investments shall thereafter be exempt from all taxation in the State or any of the municipalities or local divisions of the State * * * for the period of years from

the payment of such tax for which such tax shall have been paid and such stamps affixed."

Under section 221-b, above quoted, these investment securities were subject to the imposition of the additional tax of five per centum of the appraised inventory value thereof, unless it appeared that the decedent had availed himself of the privilege of paying the tax of twenty cents a year on each $100 as provided by section 331, or had paid a personal property tax upon said securities in the tax district of his residence. The payment either of the tax to the Comptroller under section 331 or the payment of a local personal tax would relieve the property from assessment of the additional five per cent tax under section 221-b. It is conceded that the decedent did not avail himself of the privilege of paying the tax of twenty cents on each $100 of said investment securities, as provided by section 331. It is likewise true that he never paid a personal property tax on the bonds in question. A very good reason exists why he had not adopted the latter course. These bonds were never assessed locally. Assessments upon personal property in the city of New York are made as of the first day in October not a Sunday or a legal holiday in each year and the taxable status shall be fixed for each year on that day in the preceding year. (See Greater New York Charter [Laws of 1901, chap. 466], § 892 et seq., as amd. by Laws of 1911, chap. 455.) These bonds were purchased by the testator on October 16, 1916. Thus he acquired them after the date when they might have been assessed as personal property for the year 1917. Testator died on September 28, 1917, two days prior to the time when he might have been taxed upon the assessment roll on October 1, 1917. Therefore, he never had an opportunity to avail himself of one of the courses held out by the statute whereby the securities in question might have been relieved from the payment of the additional five per centum tax under section 221-b of the Tax Law. At no time during the period of his ownership of said securities was he able to pay a personal tax thereon in his residential tax district. He could have paid the tax to the Comptroller of twenty cents on $100 and had the stamps attached to the securities, showing such payment, and thereby have prevented the imposition of the additional transfer tax under section 221-b. He was, however, not required to

do this.    There remained the other alternative, which was to pay a personal property tax to the tax officers of his resident district.    It seems to me that the Legislature in enacting section 221-b, intended thereby to discourage the evasion of the payment of a personal property tax, and to that end imposed the additional five per cent tax upon such investment securities upon which a tax had not been paid in one of the two ways suggested.    In other words, I think the Legislature intended to hold out to the owner of investment securities the privilege of avoiding additional taxation upon a transfer of his property at death by either of the two courses.    I think the Legislature only intended to impose this additional transfer tax in cases where the owner had had an opportunity to pay a tax thereon, either to the Comptroller or in the tax district of his residence, and had neglected to adopt either course.    The second means of exempting his securities was never open to him.    Testator showed no disposition to adopt the first course which would render his securities immune, but there is no presumption that he would not have availed himself of the second alternative when the time came at which he could have paid a personal tax to the local authorities.    Had he lived two days longer and had the securities not been assessed upon the assessment roll of October 1, 1917, and had he made no effort to list these securities with the local assessors and to pay a tax thereon, then all opportunity to avoid the payment of the additional transfer tax would have been lost.    But we cannot say, I think, that such was his intention until the opportunity came for him to act.    Death removed him prior to the time when he could have availed himself of the second alternative.    At no time while he held the securities in question could he pay a personal property tax thereon.    Under these circumstances I think the order imposing an additional transfer tax under section 221-b was wrong, and that the assessing order imposing such tax was properly modified by the surrogate.

The Comptroller relies upon *Matter of Watson* (226 N. Y. 384), as decisive of the question presented upon this appeal. The facts in the case at bar are clearly distinguishable from those existing in *Matter of Watson*.    Indeed, I think the decision in the *Watson* case supports the decision of the sur-

rogate here under review. In *Matter of Watson* this court held (186 App. Div. 48) that as applied to the facts in that case section 221-b was unconstitutional as discriminatory and violative of the constitutional guaranties of due process of law and equal protection of the laws. (See State Const. art. 1, § 6; U. S. Const. 14th Amendt. § 1.) This court was reversed in the Court of Appeals, the higher tribunal holding that section to be constitutional under the peculiar facts presented. When the *Watson* case was before us we held that the additional tax imposed by section 221-b was in the nature of a penalty for failure to pay a tax upon investments. The Court of Appeals held otherwise, holding that the payment of the tax on investments was not compulsory but optional, because of the owner's right to submit to local assessment. At page 404 the Court of Appeals said: " It is said that we must treat the Investment Tax Law as though it were a compulsory tax upon the face value of bonds or the actual value without any opportunity to be heard as to the amount assessed. The tax on investments is not compulsory but optional. An owner· is not compelled to submit to a State tax. He may register his bonds with the State Comptroller and pay a certain amount according to face value and thus free the securities from local assessment. If he does not choose to do this he can submit to local assessment which is according to *actual value with full opportunity to be heard.* How can it be claimed that article XV of the Tax Law is compulsory or upon what theory can an owner say that he was forced to pay the State tax when he does so voluntarily in order to escape a greater tax *according to actual value?* "

In *Matter of Watson* the Court of Appeals reversed this court and held section 221-b, as applied to the facts in that case, to be constitutional. The decision of the tribunal of last resort upholding the statute was by a divided court, three members of the court dissenting, and one of the required majority concurring in the result only. But accepting, as we must, the decision of that court as final upon the facts before it, it seems to me that the facts in the case at bar are clearly distinguishable from those passed upon by the Court of Appeals in the *Watson* case. That that court regarded its decision there as only determinative of the facts presented,

and that under different circumstances it might reach a differ-
ent conclusion, is sustained by the following language of the
opinion (*Matter of Watson*, 226 N. Y. 404): " We treat this
case, therefore, as it is 'presented without trying to devise
instances where the law might violate fundamental principles.
We cannot now see how it is unconstitutional. Time is more
fecund than the mind and instances may arise hereafter which
may present other and further questions regarding this law.
Experience in application may furnish information which we
do not now possess, and as to such questions we reserve the
right to consider them as and when they arise."

We think that time has proven to be " more fecund than
the mind " by the facts now presented in the instant case, and
that the very reason of the surrogate's decision in the case
at bar distinguishes this case from the *Watson* case and that
the very ground upon which the court of last resort upheld the
law in the *Watson* case, viz., that the payment of the tax
upon inheritance was not *compulsory*, but was *permissive*,
because of the option of the owner to submit to local taxation,
is wanting in the present case. In the *Watson* case the owner
held the investments for a period of time which included at
least two tax levies during the last years of his life when
he might have listed his said securities and paid a local per-
sonal property tax thereon. This he did not do. In the case
at bar the owner was afforded no opportunity to pay a local
tax. That the Court of Appeals only intended to uphold
the law imposing an additional inheritance tax upon the bonds
upon which the owner had had an opportunity to pay either a
local assessment or a State tax seems clear from the following
language, at the bottom of page 405: " Having placed such a
tax upon the actual value of bonds which have paid neither a
local assessment nor a State tax (*which is optional and, there-
fore, legal*), there is no ground for holding such inheritance tax
unconstitutional. The selection of such property for inherit-
ance tax is within the powers of the Legislature.

" To say that a man is compelled to pay a State tax in order
to avoid this inheritance tax when he could pay the ordinary
local assessment upon the actual value of his holdings and
achieve the same end is carrying the constitutional protection
to an unreasonable extent."

In the case at bar the owner never had any option.   He was, under the circumstances of this case, *compelled* by the statute to pay the State tax if he was to relieve his property from additional taxation after his death.   No other course was open to him.

Therefore, the decision of the Court of Appeals in *Matter of Watson* does not impress me as adverse to the contention of the respondent herein, but, on the contrary, that therein the decision of the learned surrogate finds ample support.

The order of the surrogate from which this appeal is taken should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur; PAGE, J., dissents on the authority of *Matter of Watson* (226 N. Y. 384, 405).

Order affirmed, with ten dollars costs and disbursements.