Matter of the Transfer Tax upon the Estate of
C. GOTTLOB KOLB, Deceased.

(Surrogate's Court, Bronx County, February, 1921.)

Transfer tax — what not subject to — statutes — trusts — affidavits — Tax Law, § 221(b)— Code Civ. Pro. § 829.

The statute imposing a transfer tax, being a special tax law, will be construed strictly against the state and favorably to the taxpayer to the end that he may not be subjected to special burdens without clear warrant of law.

Where the appraiser in fixing a transfer tax included a savings bank account standing in decedent's name in trust for his daughter, but the proof embodied in an affidavit of the daughter is that the moneys in said account were her own, derived from gifts to her from various persons, and intrusted by her to decedent who deposited them in the trust account, and that the only withdrawal therefrom was made by him at her request and the money delivered to and used by her, the account should not have been included in the appraiser's report as subject to a transfer tax.

A contention that section 829 of the Code of Civil Procedure applies to the affidavit made by the daughter is untenable, and while the fact that the affidavit is self serving must be considered in deciding what weight should be given to it, the court is not warranted in disregarding it particularly as its recitals stand uncontradicted and unimpeached.

Only such transfers of investments as are taxable under article 10 of the Tax Law become liable to taxation under section 221(b) of the Tax Law, which was in force at the date of decedent's death, but before the tax thereunder is imposed the value of the transfer should be ascertained by deducting from the value of the investments so much of the debts as are chargeable against them.

In appraising the fair market value of the transfer of such investments at the time of decedent's death, the accrued interest thereon to that date must be included.

PROCEEDINGS on appeal from order fixing transfer tax.

Surrogate's Court, Bronx County, February, 1921.     [Vol. 114.

Ehrich, Wheeler & Walter (William C. Stone, of counsel), for appellant.

John A. Boyle, Jr., for state comptroller.

SCHULZ, S. The executors of the last will and testament of the decedent appeal from the report of the transfer tax appraiser and the order entered thereon in this proceeding.

The first ground of error asserted is that in fixing the tax there was included an account in the Bowery Savings Bank in form as follows: " Christian G. Kolb, in trust for Marie E. D. Kolb, daughter." This account amounted with interest to the sum of $2,417.51. It is contended that the moneys evidenced thereby were the property of the said daughter before the death of the decedent and form no part of his estate and that the trust which the form of the account evidenced was irrevocable.

The daughter of the decedent named in the account submitted an affidavit in which she set forth that the moneys deposited therein were her own moneys derived from gifts made to her by various persons and entrusted by her to her father, the decedent, who deposited the same in the said account and that the only withdrawal was made by her father in the year 1917 at her request in the sum of $400, and was delivered to and used by her. So far as the record discloses, the appraiser did not require the deponent to appear and be examined nor was any other witness interrogated.

The form of the account standing alone establishes a tentative trust revocable at will, until the depositor died or completed the gift in his lifetime by some unequivocal act or declaration, such as the delivery of the pass book or notice to the beneficiary. *Matter of*

*Totten,* 179 N. Y. 112; *Matthews* v. *Brooklyn Savings Bank,* 208 id. 508.

In this matter we have nothing but the presumption which the form of the account raises, on the one side, and on the other, the affidavit in question which, if it truthfully states the facts, rebuts the presumption, shows that the moneys deposited were in fact the property of the daughter and would lead to the conclusion that the account should not have been included for purposes of taxation. See cases cited in *Matter of Klein,* 92 Misc. Rep. 318.

I find no support in the authorities for the contention that section 829 of the Code applies to the affidavit in question. The same are to the contrary (*Matter of Gould,* 19 App. Div. 352; 156 N. Y. 423; *Matter of Brundage,* 31 App. Div. 348; *Matter of Bentley,* 31 Misc. Rep. 656), and while the affidavit is self-serving which fact must be considered in deciding what weight shall be given to it, and must be received with caution, that of itself does not warrant me in disregarding it. *Matter of McGillicuddy,* 194 App. Div. 28. In view of the fact that the affidavit was received, the deponent not subjected to an examination or cross-examination and that its recitals stand uncontradicted and unimpeached, I reach the conclusion that the account in question should not have been included for purposes of taxation. The law imposing the tax, being a special tax law, must be construed strictly against the government and favorably to the taxpayer, so that the latter may not be subjected to special burdens without clear warrant of law. *Matter of Vassar,* 127 N. Y. 1, 12. When there is any doubt as to whether a tax is to be levied or not, it should be resolved against the state. *Matter of Wiemann's Estate,* 179 N. Y. Supp. 190.

Another ground of appeal is that a tax was fixed upon some investments pursuant to the provisions of

Surrogate's Court, Bronx County, February, 1921.     [Vol. 114.

section 221-b of the Tax Law (Cons. Laws, chap. 60, as amd. by Laws of 1917, chap. 700, § 2), which section is claimed to have been in violation of the Constitution of the United States and that of the state of New York.

Since the argument of the matter, however, the United States Supreme Court has rendered its opinion in *Matter of Watson,* N. Y. L. J., Dec. 11, 1920, to the effect that the statute in question violated neither the state nor the federal Constitution. In the brief of the appellants it was conceded that a decision in that matter would dispose of the constitutional question raised by them on this appeal.

It is further claimed by the appellants that it was error to fix the amount of said tax under section 221-b of the Tax Law, *supra,* without deducting from the value of the investments subject to such tax a proportionate amount of the debts and other charges paid by the executors, and further that under the section in question, accrued interest should not have been included in determining the value of the investments.

Section 221-b, since repealed by chapter 644 of the Laws of 1920, was in force upon the date of the decedent's death and provided so far as material to the question involved, that: " Upon every transfer of an investment, as defined in article fifteen of this chapter, taxable under this article, a tax is hereby imposed, in addition to the tax imposed by section two hundred and twenty-one-a, of five per centum of the appraised inventory value of such investment,   *   *   *."

The report of the appraiser fixes the gross value of the estate of the decedent at $323,940.44; the deductions at $43,672.44 and the net estate at $280,268. In the gross estate are contained investments taxable under the section stated which the appraiser has valued at the sum of $161,029.47, so that it is evident

that the securities bear the same proportion of the deduction which the value of such securities bear to the value of the gross estate which is forty-nine and seven-tenths per cent thereof or in value $21,705.20. It is claimed that the appraiser was in error in failing to deduct said amount from the value of said securities before imposing the tax of five per cent under section 221-b.

The question to be considered has been the subject of an opinion by the comptroller of the state of New York, reported in 14 State Department Reports, 535, in which he states that the language of the section providing that if the investments are liable to this additional tax it must be five per cent of the "appraised inventory value" precludes any consideration as to how much a legatee or distributee may actually receive, and that this additional tax becomes the state's property upon the death of the owner without any reference whatsoever to such amount.

From the language of the section itself, it is apparent that the tax under section 221-b is not a tax upon the property itself, but is only a tax upon the transfer thereof just as that under the other sections of the article have been held to be. *Matter of Watson,* 226 N. Y. 384; affd., U. S. Sup. Ct., N. Y. L. J. Dec. 11, 1920; *Matter of Hazard,* 228 N. Y. 26; *Matter of Vanderbilt,* 187 App. Div. 716; *Matter of Penfold,* 216 N. Y. 163; *Keeney* v. *State of New York,* 222 U. S. 525. As only such transfers of investments as are taxable under article 10 become liable for the tax which section 221-b imposes upon them (*Matter of Washbourne,* 180 N. Y. Supp. 507; affd., 190 App. Div. 940; affd., 229 N. Y. 518; *Matter of Zimmerman,* 110 Misc. Rep. 295), and as debts are deducted from the estate before the value of the transfer is fixed for purposes of taxation under article 10, it would seem to me that

before the tax under section 221-b is imposed, the value of the transfer should be ascertained by similarly deducting from the value of the investments so much of the debts as are chargeable against them. The sections of article 10 should be read together. *Matter of Austin,* 109 Misc. Rep. 584 and cases cited. If we construe the phrase " appraised inventory value " to mean the market value of the investments at the time of the death of the decedent regardless of the liabilities which exist against them instead of as meaning the inventory value of the investment as appraised for purposes of taxation, that is after the deduction of a proportionate amount of the debts, it would appear that the tax would not be a tax upon the transfer but rather a tax upon the property itself, whereas in *Matter of Watson,* 226 N. Y. 384, 401, the court said: " It is a flat tax of five per cent upon the transfer of property not theretofore taxed as specified."

Startling results might follow if such a construction were favored. Assuming an estate to consist of $100,000 in investments as defined by article 15 of the Tax Law, and $1,000 of other property, and to be subject to debts of $100,000, the transfer in such estate, assuming that it goes to a person of the five per cent class, would be taxable under article 10, hence it would be taxable under section 221-b. The tax under section 221-a would be on $101,000, less debts of $100,000, that is on $1,000, whereas the additional tax under section 221-b would be five per cent of $100,000, although it would be necessary to apply approximately $99,010 of the investments to the payment of the debts. Only about $990 of the investments would remain and be transferred, upon which a tax of $5,000 would be imposed.

The use in the statute of the phrase " appraised inventory value " was unfortunate, and while the

question is not free from difficulty, I do not believe
the intent of the legislature was to the effect claimed
by the counsel for the comptroller. I find support for
this view in the decisions of the surrogates of the
counties of New York and of Kings. Thus in *Matter
of Kemp* and in *Matter of Peck,* both reported in the
New York Law Journal of March 3, 1920, the learned
surrogate of Kings county reversed orders fixing
transfer taxes and remitted the matters to the
appraiser to deduct proportionate amounts of the
debts and administration expenses from the value of
the securities taxable under section 221-b of the Tax
Law. In *Matter of Kent* and in *Matter of Turner,*
N. Y. L. J. June 17, 1920, it was held by one of the
learned surrogates of New York county that the
appraiser erred in not including the funeral and
administration expenses and commissions in making
an allowance for the proper deduction from the market
value of the securities in fixing the sum on which the
tax should be imposed under section 221-b.

In *Matter of Watson,* 226 N. Y. 384, the court said:
"Again, it must be noted, that if the amount of an
estate is eaten up by debts so that the assets consisting
of these investments do not pass to anybody, of course,
there can be no tax. *Likewise the investments should
pay their proportionate part of the debts without
tax* " (italics are mine), and while it may be urged
that the statement quoted was dictum, it is the only
expression by the Court of Appeals that I have been
able to find upon the question.

I hold that a proportionate amount of the deduc-
tions should have been charged against the invest-
ments mentioned before fixing the value of their trans-
fer for purposes of taxation under section 221-b.

The contention that the interest to the date of the
death of the decedent should not be included in

appraising the value of such investments is not sustained. It is the fair market value of the transfer at the decedent's death which must be ascertained (Tax Law, § 230), and this includes accrued interest. *Matter of Peck, supra.*

The fourth ground of appeal is from the taxation of the securities hereinbefore referred to under section 221-b aforesaid, it being claimed that such section was suspended, nullified and repealed by the provisions of chapter 627 of the Laws of 1919. This ground, however, was not urged in the brief, and in my opinion is not tenable.

The order appealed from is reversed for the reasons stated and the report remitted to the appraiser to proceed as above indicated.

Order reversed.